**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CAMILLE J. SIANO ENDERS,

                Plaintiff,

      v.                                      1:19-CV-948
                                                     (BKS/CFH)

JERRY BOONE, HONORA MANION, and MARY
STARR,

                Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

Girvin & Ferlazzo, P.C.             DANIEL RUBIN, ESQ.
20 Corporate Woods Blvd.
Albany, New York 12211-2350
Attorneys for plaintiff

New York State Attorney General     LYNN MARIE KNAPP, ESQ.
The Capitol
Albany, New York 12224
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

      Presently before the Court is plaintiff Camille J. Siano Enders' Motion to Compel

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37(a).  Dkt. No. 33.

Defendants Jerry Boone, Honora Manion, and Mary Starr opposed by letter motion.

Dkt. No. 35.  For the reasons that follow, plaintiff's Motion to Compel is granted in part

and denied in part.

## I.  Background

On April 17, 2020, plaintiff served her first demand for documents.  <u>See</u> Dkt. No. 33-3. Defendants objected to document demands three,[1] four,[2] five,[3] nine,[4] and 10.[5] <u>See</u> Dkt. No. 33-4.  Generally, defendants argue that (1) the documents are protected by the investigative law enforcement privilege; (2) defendants lack custody or control over the documents; and (3) the documents cannot be turned over due to privacy concerns relating to New York Tax Law § 1825.  <u>See id.</u>  Defendants declined to enter into a protective order with respect to their concerns regarding material requested that they believed implicated NY Tax Law § 1825.  <u>See</u> Dkt. No. 33-1 at 8.

## II.  Legal Standard

Rule 26(b)(1) states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in

---

[1]  "Document Request No. 3: All communications between the Agency and/or Defendants and the New York State Office of the Inspector General related to or concerning Plaintiff from January 1, 2014 to the present, including but not limited to those related to Case # 2074-037-2015."  Dkt. No. 33-3 at 6.

[2]  "Document Request No. 4:  All communication between the Agency and/or Defendants and the Agency's Office of Internal Affairs related to or concerning Plaintiff from January 1, 2014 to the present, including but not limited to those related to Case # 2015-0179 or # 2016-0133."  Dkt. No. 33-3 at 6-7.

[3]  "Document Request No. 5:  Un-redacted Copies of all notes, reports, memos, case activity reports, recorded interviews, witness statements, employee complaints, spread sheets, evidence lists, third-party subpoenas and/or responses thereto, third-party document requests and or responses thereto, and/or other documents related to investigations concerning Plaintiff whether conducted by Defendants, the Agency, the Agencies Office of Internal Affairs, the New York State Inspector General's Office or any other individual or entity, from January 1, 2014 to the present, including but not limited to Case # 2015-0179, # 2016-0133, and/or Case # 2074-037-2015."  Dkt. No. 33-3 at 7.

[4]  "Document Request No. 9:  Communications/e-mails between Plaintiff and Agency employees, including the Individual Defendants and/or others between January 1, 2014 and the present related to Plaintiff's employment, performance, termination, retention, outside activities, political campaign/activity, and or otherwise relevant to the claims and defenses in this action."  Dkt. No. 33-3 at 7.

[5]  "Document Request No. 10: Communications [sic]/e-mails to or from any Agency employees, including the Defendants, between January 1, 2014 and the present related to Plaintiff's employment, performance, termination, retention, outside activities, political campaign/activity, and or otherwise relevant to the defenses raised by Defendants in this action."  Dkt. No. 33-3 at 7-8.

evidence in order to be discoverable." FED. R. CIV. P. 26(b)(1). "Under Rule 37,

following a good-faith effort to meet and confer, upon to all parties notice, "a party may

move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a).  "Motions

to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district

court.'" Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL

763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting United States v. Sanders, 211 F.3d

711, 720 (2d Cir. 2000)).


### III.  Discussion

### A.  Custody, Possession, or Control

Plaintiff argues that defendants' contention that they do not have access to the

requested New York State Department of Taxation and Finance ("DTF") documents is

"without merit" because (1) "it is well established that a lawsuit against agency leaders

in their official capacities is a lawsuit against the agency itself, "dkt. no. 33-1 (quoting

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)), and (2) DTF has received notice

and an opportunity to respond "to this suit" as: (a) "DTF's general counsel, Helena

Pederson, Esq., authored and signed Defendants' responses to Plaintiff's Demand for

Interrogatories," and (b) "Defendants have already disclosed approximately 520 page of

DFT documents (including Plantiff's own personnel file and emails) that they would not

have had access to in their individual capacities."  Dkt. No. 33-1 at 12.  Therefore,

plaintiff argues, "DTF cannot reasonably object to being treated 'in all respects' as a

party to this action."  Id.

Defendants argue that they cannot be compelled to produce documents in the possession of the DTF because DTF is not a named defendant, and the named defendants, all retired former DTF employees, are not in custody or control of these documents.  See Dkt. Nos. 35 at 2; 35-1; 35-2; 35-3. They make similar arguments with respect to document request numbers 3, 4, and 5 seeking records from the DTF's Office of Internal Affairs, the New York State Inspector General's Office, "or any other individual or entity." Dkt. No. 33-3 at 7.  Addressing the "approximately 520 pages of DTF documents that have been provided to Plaintiff," defendants state that these were disclosed as a "result of defense counsel's good-faith effort to engage in discovery." Dkt. No. 35 at 2.  Defendants provide that counsel "worked with DTF agency counsel to obtain and produce responsive documents to the extent that production was appropriate" as "[t]he alternative would have been to produce nothing, which is not a practice typically adopted in defending cases of this kind."  Id. at 3.

"The burden of establishing control over the documents being sought rests with the demanding party."  New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 268 (N.D.N.Y. 2006) (citing DeSmeth v. Samsung Am., Inc., 92 CIV. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998)).  Insofar as plaintiff suggests that defendants have control over documents from offices outside of DTF, such as the New York State Inspector General's Office, as a general premise, "state agencies for most purposes are separate and distinct and are not viewed in the aggregate."  New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 266 (N.D.N.Y. 2006) (quoting Strauss v. N.Y.S. Dep't of Ed., 26 A.D.2d 67, 805 N.Y.S.2d 704 (N.Y. App. Div. Dec. 15, 2005)).

Plaintiff fails to otherwise demonstrate that defendants are in possession, custody, or control of documents from the Office of the Inspector General, an entirely separate agency from where defendants and plaintiff worked. The Court agrees with defendants that they have demonstrated that they are not in possession or control of documents from the Office of the Inspector General.  Thus, the Court declines to compel defendants to produce documents responsive to those demands.  Similarly, insofar as the demands request documents from "any other individual or entity," such request is denied.  The Court cannot assess a relationship between defendants and unidentified individuals or entities if those individuals or entities potentially include those outside of DTF.

As to documents from DTF and DTF's Office of Internal Affairs, it is a closer question.

> Courts hold that even where a party, as in a case such as this, lacks actual physical possession or custody of requested documents for purposes of Rule 34(a), such party may nevertheless be found to have control of the documents within Rule 34(a)'s scope of production if the party is legally entitled to the documents or has the practical ability to acquire the documents from a third-party . . . . .

Gross v. Lunduski, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (internal citation omitted). "Whether a party has a sufficient degree of control over requested documents to constitute a practical ability to obtain the documents is a question of fact, as to which the requesting party has the burden."  Id. at 142-43 (internal citation omitted).  Factors courts have considered when assessing whether a party has the practical ability to obtain access to documents in the possession of a non-party include "'the existence of cooperative agreements . . . between the responding party and the non-party, the extent to which the non-party has an [sic] stake in the outcome of the litigation, and the non-

party's history of cooperating with document requests[,]'" Id. at 142-43 (quoting Alexander Interactive, Inc. v. Adorama, Inc., No. 12 Civ. 6608 (PKC)(JCF), 2014 WL 61472, at *3 (S.D.N.Y. Jan. 16, 2014)), and a "closely coordinated interest" in the outcome of the litigation between the party opposing discovery and the nonparty entity in possession of the documents at issue, Wandering Dago Inc. v. New York State Off. of Gen. Servs., No. 1:13-CV-1053 (MAD/RFT), 2015 WL 3453321, at *10 (N.D.N.Y. May 29, 2015).

It is clear to the Court that the requested records are not in the physical possession, custody, or control of the individual defendants as retired DTF employees, and many of these records – specifically records from DTF's Office of Internal Affairs – were also not in their control while they were employed by DTF; however, as set forth above, the analysis does not end there. Dkt. Nos. 35-1 ¶¶4-6, 35-2 at 2 ¶5, 35-3 at 2 ¶¶4-6. The key inquiry here is whether defendants have the "practical ability" to acquire the documents from a third party DTF and DTF's OIA.[6]

Plaintiff has demonstrated that defendants have at least some "practical ability" to obtain documents from DTF as defendants have already produced certain responsive documents in DTF's possession.[7] Gross, 304 F.R.D. at 142. Although defendants

---

[6]  As a threshold issue, DTF is not named as a party to this lawsuit. Plaintiff urges the Court to take a wider-lens approach, pointing to Kentucky v. Graham's proclamation that a suit against a state employee in his or her official capacity is essentially a suit against the state agency itself, whereas defendants contend that Kentucky v. Graham "does not concern discovery, and does not address the question of whether a retired government employee has an obligation to produce records of his/her former government employer." Dkt. No. 35 at 2; 473 U.S. 159, 165. Although the Court agrees, in a general sense, that Kentucky v. Graham does not address issues of discovery, to hold that the Supreme Court's conclusion that an official capacity suit against a state employee is for all intents and purposes a suit against the state itself, but that the state agency need not participate in discovery would lead to an absurd result. However, the Court need not reach this question as it concludes that plaintiff has demonstrated that defendants have the practical ability to obtain the documents.

[7]  The Court is confused by plaintiff's argument suggesting that Helena Pederson, Esq, is DTF's general counsel and "authored and signed Defendants' responses to Plaintiff's Demand for Interrogatories." Dkt. No. 33-1 at 12. As defendants provide, Ms. Pederson is an attorney with the New York State Office of the

contend that they were able to obtain these documents as part of a "good-faith effort to engage in discovery" which involved "work[ing] with DTF agency counsel to obtain and produce responsive documents to the extent that production was appropriate," they do not explain why similar effort or "working with" DTF counsel is not possible for the remaining requests.  See Dkt. No. 35 at 2-3.  As defendants have demonstrated that they have an "ability to obtain the documents," through a history of voluntary cooperation with DTF, the documents can be considered to be "under defendants' control."  Boardman, 233 F.R.D. at 268 (quoting Hunter Douglas, Inc. v. Comfortex Corp., No. CIV. A. M8-85 (WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) and Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y.1997)).

## B.  Investigative Law Enforcement Privilege

Defendants argue that demand numbers four and five request production of documents from DTF's Office of Internal Affairs ("OIA"), which is "not a party to this action" and whose documents are protected by the "investigative law enforcement privilege."  Dkt. No. 25 at 3; Dkt. No. 33-4 at 6-7. They similarly argue, with respect to requested records from the Office of the Inspector General, that the ("OIG") is not a party to the action, defendants do not have access to the documents, and the

---

Attorney General.  Insofar as plaintiff may have inadvertently sought to refer to Kimberly Boucher Furnish, DTF counsel who signed the verification for the interrogatory responses, dkt. no. 33-5, the Court does not find that a DTF attorney singing the verification indicating that she believed the responses to be true based on her personal knowledge weighs much in favor of demonstrating defendant's custody or control over the DTF documents in dispute.

documents are also protected by the investigative law enforcement privilege.  Dkt. No.

33-4 at 6-8.

Plaintiff contends that defendants did not meet their burden of establishing "the

existence of the privilege."  Dkt. No.3 3-1 at 10.  Plaintiff argues that defendants failed to

provide any legal authority demonstrating that the investigative law enforcement

privilege "exists" or that it "applies to the instant action."  Id.  Plaintiff argues that

defendants' knowledge of the outcome of the OIA and OIG investigations,

> each of which found that the allegations [against plaintiff] were unfounded
> or could not be substantiated, as well as their correspondence with these
> agencies is integral to determining whether Plaintiff's allegedly improper
> political activity occurred at all and whether Defendants are pointing to this
> behavior as a mere pre-text for her otherwise unlawful termination.

Id. at 10-11.

> The purpose of the law enforcement privilege[8] is "'to prevent disclosure of
> law enforcement techniques and procedures, to preserve the
> confidentiality of sources, to protect witness and law enforcement
> personnel, to safeguard the privacy of individuals involved in an
> investigation, and otherwise to prevent interference with an investigation.'
> " These are important goals of very real consequence. Nevertheless, the
> law enforcement privilege is not an instrument by which law enforcement
> agencies may shield themselves from public scrutiny. Therefore, courts
> must vigilantly review an assertion of the privilege and must often conduct
> an in camera inspection of the materials in question."

Nat'l Rifle Ass'n of Am. v. Cuomo, 332 F.R.D. 420, 441-42 (N.D.N.Y. 2019) (quoting

Floyd v. City of New York, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010)). "The Second

Circuit has held that 'the party asserting the law enforcement privilege bears the burden

---

[8]  Insofar as defendants refer to the "investigative law enforcement privilege," the Court assumes this
privilege is equivalent to the law enforcement privilege. The two cases defendants cite to support their
argument regarding this privilege review the law enforcement privilege.  See Dkt. No. 35 at 3 (quoting
United States v. Myerson, 856 F.2d 481, 483 (2d Cir. 1998) and citing Nat'l Congress for P.R. Rights ex
rel. Perez v. City of New York, 194 F.R.D. 88 (S.D.N.Y. 2000)).

of showing that the privilege applies to the documents in question.'" Id. (quoting In re The City of New York, 607 F.3d 923, 944 (2d Cir. 2010)).

It is not clear to the Court that defendants have standing to raise the law enforcement privilege on behalf of DTF or DTF's OIG.  However, even assuming defendants have standing to raise the privilege, they have presented no argument and no authority demonstrating the applicability of the privilege nor any documents or a privilege log for the Court to review to assess the privilege's application.  As this Court is required to "vigilantly review an assertion of the privilege," and defendants have fully failed to demonstrate the applicability of this privilege, the Court finds that defendants have failed to meet their burden of showing that the law enforcement privilege applies.[9]

Accordingly, with respect to documents defendants contend are protected by the law enforcement privilege, the Court concludes that defendants have failed to meet their burden of demonstrating that this privilege applies to documents from DTF and DTF's OIA.  Accordingly, within forty-five days from the date of this Memorandum-Decision & Order, defendants must produce to plaintiff all documents responsive of her requests from August 1, 2014, until November 24, 2016.[10]  As the Court concluded that plaintiff failed to demonstrate that defendants are in custody, possession, or control of any

---

[9]   As the Court has already concluded that plaintiff did not meet its burden of proving that defendants have possession, custody, or control of documents from the Office of the Inspector General, the Court need not reach this argument.  However, if this Court were to reach this issue, it would be noted that it is not clear to the undersigned how defendants have standing to raise this privilege on behalf of an entirely distinct agency.  Further, if the Court were to reach this argument, it would find that defendants failed to meet their burden of showing that the law enforcement privilege applies to documents requested from the Office of the Inspector General for the same reasons as the Court reached this conclusion with respect to DTF and DTF's OIA.

[10] The Complaint provides that plaintiff "became the Deputy Commissioner and Director of the Bureau of Conciliation and Mediation Services" for DTF in August 2014.  Compl. at 2 ¶10. Plaintiff was terminated on August 24, 2016. Compl. at 3 §15.  Allowing for discovery until November 24, 2016, three months after her termination, reasonably encompasses her term of employment with DTF plus an additional buffer that may capture potentially relevant post-termination communications.

documents from the OIG, the Court need not reach the law enforcement privilege argument with respect to this request.[11]

### C.  New York State Tax Law § 1825

Plaintiffs argue that defendants' objections relating to document demands nine and 10 are "overinclusive and improper" as the "mere fact that Plaintiff and/or Defendants worked for DFT does not mean that each and every email they sent is protected by the secrecy provisions of NY Tax Law 1825."  Dkt. No. 33-1 at 12. Defendants argue that it is "unlawful for a DTF employee to divulge taxpayer information or produce documents that contain taxpayer information" and that a violation of this statute "carries criminal penalties."  Dkt. No. 35 at 4.  Defendants continue, "[g]iven that the title Plaintiff held at DTF and the job duties that were associated with her title, there is concern that the requested communications/e-mail contain information that cannot be disclosed."  Id.

First, the tax law provides an exemption from criminal penalty when disclosures otherwise in violation with the secrecy provisions of § 1825 are made "in accordance with proper judicial order."  NYJUR Taxation § 1880.  Second, as for the potential of civil penalties,[12] the language of § 1825 only permits liability for disclosures not made in good faith.  See NY Tax § 380(2)(b)8.  Finally, although defendants express concern about violating § 1825 by responding to plaintiff's discovery demands, defendants fail to demonstrate why appropriate redactions for any responsive documents that contain

---

[11]   If the Court were to reach this argument, the Court notes that it would decline to conclude that the privilege applies as defendants have not met their burden for the reasons set forth in its review of the application of the law enforcement privilege to DTF and DTF's OIA documents.
[12]   The Court acknowledges that defendants did not explicitly discuss civil penalties.

information within the parameters of § 1825 would not adequately address these concerns.

Given that defendants have not produced a privilege log, neither plaintiff nor the Court have any ability to assess whether any or a portion of the relevant communications or e-mails information that fall within § 1825's boundaries.  As plaintiff rightly notes, that plaintiff and defendants worked for the DTF does not mean that every communication is blanketed by section 1825, or at least defendants have failed to produce evidence of such.

Insofar as defendants object to the time frame of the requested e-mails – requested from 2014 to the present – and that it seeks communications and e-mails from unnamed "Agency employees" who are not parties to the action relating to plaintiff's employment, performance, termination, retention, outside activities, and political campaign and activities, the Court agrees with defendants that the timeline sought is overreaching, but disagrees insofar plaintiff generally requests communications from "agency employees."  Although the Court agrees that plaintiffs potentially could narrow this request by providing at least some names of those DTF employees likely to have been involved in such e-mails/communications, it is not reasonable to conclude that plaintiff can be expected to anticipate the names of all those individuals who may have been involved in relevant communications.  It is the discovery process through which plaintiffs will be able to determine the relevant employees potentially involved in communications relating to plaintiff's campaign activity, termination, and related matters.  Thus, in this instance and within the context

of the request, the Court does not find the request overbroad insofar as it seeks communications from unnamed "Agency employees."

As noted, as it relates to the timeframe of communications requested, plaintiff has failed to demonstrate why, if terminated in 2016, a request for such records until the present – 2021 – is reasonable and necessary.  Accordingly, plaintiffs' motion is granted in part.  Defendants are required to produce all relevant communications and/or e-mails from August 1, 2014, until November 24, 2016.  If defendants believe certain communications contain subject matter protected under § 1825, they may redact those portions of the communications and provide plaintiff a privilege log containing enough detail explaining the redactions and why the redactions fall within the protections of § 1825.  Defendants have forty-five days from the filing date of this Memorandum-Decision & Order to produce to plaintiff communications responsive to requests nine and 10 and a privilege log.

## IV.  Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion to Compel, Dkt. No. 33, is **GRANTED IN PART**:

Within **45 days** from the filing date of this Memorandum-Decision & Order, defendants are to produce to plaintiff all documents responsive to:

(1) document request number three, from August 1, 2014, until November 24, 2016, excluding that portion of the request that involves documents in the possession, custody, or control of the New York State Office of the Inspector General;

(2) document request number four, from August 1, 2014, until November 24, 2016;

(3) document request number five, from August 1, 2014, until November 24, 2016, except those documents that request documents in the possession, custody, or control of New York State Office of the Inspector General or "any other individual or entity";

(4) document request number nine, from August 1, 2014 until November 24, 2016; and

(5) document request number 10, from August 1, 2014 until November 24, 2016; and insofar as defendants believe any such responsive documents may be in violation of the secrecy provisions of New York Tax Law § 1825, defendants are to provide plaintiff with redacted copies of those documents, along with a detailed privilege log explaining why those documents fall within the protections of § 1825; and it is further

**ORDERED**, that plaintiff's Motion to Compel, Dkt. No. 33, is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: August 6, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge