UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAMILE SIANO ENDERS,

                                  *Plaintiff*,

             -against-

                                                                 19-CV-00948
                                                                      (BKS/CMF)
JERRY BOONE, et al.


                                                           *Defendants.*
_____

**STATEMENT PURSUANT TO RULE 56.1(a)**

      Pursuant to Rule 56.1(a) of the Local Rules of this Court, Defendants contend that as to the following material facts, no genuine issue exists:

**A.**    **Background and Parties**

      1.    Plaintiff served as a Deputy Commissioner at the Department of Taxation and Finance from January 2013 to August 2016.  Reiner Decl., Exh. A ("Dep. of Pl.") at 18.

           a)    As a Deputy Commissioner, Plaintiff was an "exempt class employee" at DTF.  Starr Decl.

           b)    From January 2013 to March 2016, Plaintiff also held a "hold item" title.  Starr Decl.

           c)    A hold item is a competitive class position allocated to the employee while she serves in the exempt position.  Starr Decl.

           d)    The employee takes "discretionary leave" from the hold item while serving in the exempt class position.  Starr Decl.

   e)  Although the hold item sits vacant while the employee serves in the exempt class position, the agency still must budget for the hold item.  Starr Decl.

   f)  The granting of hold items is entirely at the discretion of the appointing authority.  Starr Decl.

   g)  The granting of discretionary leave from hold items—for a period of up to two years—is entirely in the discretion of the appointing authority.  Starr Decl.

   h)  Defendant Jerry Boone did not renew Plaintiff's discretionary leave from her hold item when it was set to expire in March 2016.  Boone Decl.

   i)  Prior to deciding not to renew Plaintiff's discretionary leave from her hold item, Defendant Boone learned of the results of an investigation into Plaintiff conducted by the New York State Inspector General ("IG").  Boone Decl.

   j)  Defendant Boone informed Plaintiff that he would not renew her hold item as a result of the IG's findings.  Boone Decl; Dep. of Pl. at 114.

   k)  Plaintiff "felt that [non-renewal of the hold item] was punishment."  Dep. of Pl. 115.

   l)  After the expiration of her discretionary leave from her hold item in March 2016, Plaintiff continued to work at DTF only as an exempt class employee.  Starr Decl.

   m)  As an exempt class employee, Plaintiff served at the pleasure of the Administration, and her services could have been terminated at any time by the discretion of the Administration.  Starr Decl.

   n)  Plaintiff resumed public employment within six months of her termination from DTF.  Dep. of Pl. at 16.

    o)  Plaintiff currently serves as Deputy Chief Assistant Public Defender at the Schenectady County Public Defender's Office. Dep. of Pl. at 16.

    p)  Plaintiff testified that she could not recall answers to more than 80 questions at her deposition. Dep. of Pl.

  2.  Defendant Boone served as the Commissioner of DTF from 2015 to 2016. Boone Decl.

  3.  Defendant Boone retired from DTF in 2016. Boone Decl.

  4.  Defendant Honora Manion served as Executive Deputy Commissioner of DTF in 2015 and 2016. Manion Decl.

  5.  Defendant Manion retired from DTF in March 2019. Manion Decl.

  6.  Defendant Mary Starr served as Assistant Director of Human Resources ("HR") at DTF in 2015 and 2016. Starr Decl.

  7.  Defendant Starr retired from DTF in December 2018. Starr Decl.

**B.** **Non-Party Declarants**

  8.  Margaret Neri served as Deputy Commissioner and Ethics Officer of DTF in 2016. Neri Decl.

  9.  Lynn Rivers worked as an administrative assistant at DTF. Rivers Decl.

  10.  Ms. Rivers reported directly to Plaintiff. Rivers Decl.

  11.  Lisa Surprenant worked as an administrative assistant at DTF. Surprenant Decl.

  12.  Ms. Surprenant reported directly to Plaintiff. Surprenant Decl.

  13.  John Scott Gullie is the Assistant Director at DTF's Office of Internal Affairs. Gullie Decl.

**C.     The First Investigation Into Plaintiff's Misuse Of State Resources**

14.     In 2015, Plaintiff ran an unsuccessful campaign for re-election as a part-time Judge in the Duanesburg Town Court ("the 2015 Campaign").  Boone Decl.

15.     DTF approved Plaintiff's request to conduct the 2015 Campaign outside of work hours.  Boone Decl.

16.     The New York State Inspector General ("IG") investigated Plaintiff for improperly conducting the 2015 Campaign on DTF time.  Boone Decl.; Boone Decl. Exh. A.

17.     The IG informed Defendant Boone that multiple witnesses observed Plaintiff placing and receiving calls pertaining to outside employment as a Town Judge and the 2015 Campaign during the workday at DTF.  Boone Decl.; Boone Decl. Exh. A.

18.     The IG indicated that Plaintiff's cell phone records reflect that Plaintiff made 33 hours of calls related to the 2015 Campaign and/or work as a Town Judge during a 30-week period.  Boone Decl.; Boone Decl. Exh. B.

19.     The IG further indicated that Plaintiff's cell phone records confirmed that Plaintiff made 24 hours of calls related to the 2015 Campaign and/or work as a Town Judge during a one-month period.  Boone Decl.; Boone Decl. Exh. B.

20.     The IG did not make a recommendation as to how to proceed as to Plaintiff's misconduct because Plaintiff lost the 2015 campaign.  Boone Decl.; Boone Decl. Exh. B.

21.     After receiving the IG's findings that Plaintiff used DTF time to conduct outside work on DTF time, Defendant Boone exercised his discretion not to renew Plaintiff's discretionary leave from her hold item.  Boone Decl.

22.     Defendant Boone indicated to Plaintiff that they could revisit the possibility of a hold item in the future.  Boone Decl.

23. Plaintiff testified on April 8, 2022 that she was not aware of the IG investigation. Dep. of Pl. at 111–12.

**D. Plaintiff Requests And Receives Approval To Conduct A Second Political Campaign—With The Express Limitation That She Not Campaign At DTF Or On DTF Time**

24. On March 28, 2016, Plaintiff requested permission from DTF to conduct a campaign for New York State Supreme Court ("the 2016 Campaign"). Neri Decl.; Neri Decl. Exh. A.

25. Plaintiff's request to DTF to conduct the 2016 Campaign specifically mentioned ethics advisory opinion 98-12. Neri Decl. Exh. A.

26. Advisory Opinion 98-12 reads, in pertinent part, that a State employee may not conduct "campaign activities from a State office or during State business hours unless leave is taken," and "no State employee may solicit from subordinates, as this practice is strictly forbidden by Civil Service Law § 107." Neri Decl. Exh. D at 5.

27. DTF approved Plaintiff's request to conduct the 2016 Campaign subject to specific restrictions. Neri Decl. Exh. A.

   1. Those restrictions included

      a) "All activities must be done on the employee's own time";

      b) "No State resources of any type may be used to accomplish your outside activity"; and

      c) a "Reminder: Civil Service Law section 107 prohibits any and all political activity in the workplace."

Neri Decl. Exh. A.

5

28. On April 1, 2016, Defendant Boone and Deputy Commissioner and Ethics Official Margaret Neri met with Plaintiff to discuss the restrictions on her activity. Neri Decl.

29. At that meeting, Defendant Boone expressed concern that the campaign would interfere with Plaintiff's duties as Deputy Commissioner at DTF. Neri Decl.

30. Defendant Boone asked Plaintiff to be mindful of the fact that she would be highly visible both within DTF and to the public at large. Neri Decl.

31. Defendant Boone also reminded Plaintiff that there is increased scrutiny of state employees engaging in political activity. Neri Decl.

32. Plaintiff indicated to Defendant Boone that she could conduct the campaign entirely outside of DTF hours. Neri Decl.

33. On April 5, 2016, Deputy Commissioner Neri sent an e-mail to Plaintiff with Defendant Boone cc'd recapping the April 1, 2016 meeting. Neri Decl; Neri Decl. Exh. C.

34. In that e-mail, Deputy Commissioner Neri quoted State Ethics Commission Advisory Opinion 93-9 to Plaintiff: "'One area of particular concern for those seeking elected office is the abuse of State time and resources. . . . The law requires that the campaigns be run on an employee's own time. No state resources of any type, including . . . support staff assistance can be used in the furtherance of the campaign.'" Neri Decl; Neri Decl. Exh. C.

35. In March of 2016, Plaintiff also requested permission from the Joint Commission on Public Ethics ("JCOPE") to conduct the 2016 Campaign. Neri Decl.

36. JCOPE approved Plaintiff's request to conduct the 2016 Campaign. Neri Decl.; Neri Decl. Exh. B.

37. JCOPE's approval letter to Plaintiff specifically mentioned advisory opinion 98-12. Neri Decl. Exh. B.

38. JCOPE's approval letter also indicated that Plaintiff may not use any State resources, including "computers or support staff." Neri Decl. Exh. B.

39. JCOPE's approval letter continued: the "law also prohibits the use of one's official State position to coerce, intimidate, or otherwise influence State employees to give money or service or any valuable thing for any political purpose or influence the political action of any person." Neri Decl. Exh. B.

40. A state employee's time during the workday is a state resource. Neri Decl.

E. **Plaintiff Conducts Her Campaign, In Part, At DTF And On DTF Time**

41. In early April 2016, Deputy Commissioner Neri asked Lynn Rivers—Plaintiff's administrative assistant—to keep track of Plaintiff's campaign activities while at DTF. Neri Decl; Rivers Decl.

42. No Defendant asked Deputy Commissioner Neri to get Ms. Rivers to provide information about Plaintiff. Neri Decl.

43. No Defendant was present when Deputy Commissioner Neri asked Ms. Rivers to provide information about Plaintiff. Rivers Decl.

44. Deputy Commissioner Neri made the request of Ms. Rivers on her own volition and in her capacity as Ethics Officer. Neri Decl.

45. Ms. Rivers kept contemporaneous notes of what she observed. Rivers Decl.

46. On June 2, 2016, an attorney from DTF's Office of Counsel forwarded Deputy Commissioner Neri a campaign e-mail that Plaintiff's campaign had sent to the attorney's DTF e-mail address. Neri Decl.; Neri Decl. Exh. E.

47. In turn, Deputy Commissioner Neri forwarded the e-mail to the Director of DTF's Office of Internal Affairs ("OIA"). Neri Decl.; Neri Decl. Exh. E.

48. After Plaintiff's campaign sent that e-mail, Defendant Manion reminded Plaintiff that she needed to be more cautious about the use of State time and resources. Manion Decl.

   a) Defendant Manion specifically told Plaintiff to be cautious of the use of work time and DTF e-mail. Manion Decl.

   b) Defendant Manion also reminded Plaintiff that even the appearance of not following the rules was a problem. Manion Decl.

49. On June 2, 2016, Deputy Commissioner Neri sent an e-mail to Plaintiff to inquire why she was sending political e-mails to State e-mail addresses. Neri Decl.; Neri Decl. Exh. F.

50. Plaintiff responded to Deputy Commissioner Neri's e-mail by speculating that her campaign sent an e-mail to a bar association and that "[m]aybe some members use their state agency email addresses for [the] women's bar association membership." Neri Decl.; Neri Decl. Exh. F.

**F. The Second Investigation Into Plaintiff's Misuse Of State Resources Reveals Plaintiff Conducted Campaign Activities At DTF's Office And Pressured Multiple Subordinates To Donate To Her Campaign.**

51. After discussing the e-mail with Plaintiff, Defendant Manion heard that Plaintiff had been discussing the campaign at DTF with DTF workers, including Deputy Commissioner Richard Ernst; and been making campaign-related calls while at DTF. Manion Decl.

52. Defendant Manion was already aware that the IG previously determined that Plaintiff had abused state time and resources. Manion Decl.

53. Defendant Manion referred the matter to OIA to investigate. Manion Decl.

54. Part of OIA's investigation gathered evidence from Administrative Assistant Lynn Rivers. Gullie Decl.; Gullie Decl. Exhs. B and C; River Decl.; Rivers Decl. Exh. B.

55. Ms. Rivers worked directly for Plaintiff. Rivers Decl.

56. During the spring and summer of 2016, Ms. Rivers' desk was right outside of Plaintiff's office.  Rivers Decl.

57. Ms. Rivers wrote an affidavit for the OIA investigation into Plaintiff.  Rivers Decl.; Rivers Decl. Exh. B.

58. Ms. Rivers provided OIA with numerous examples of Plaintiff discussing her political campaign while at DTF with Deputy Commissioner Ernst.  Rivers Decl.; Rivers Decl. Exh. A; Rivers Decl. Exh. B.

59. Ms. Rivers also informed OIA of multiple examples of Plaintiff discussing her political campaign while on the phone at DTF.  Rivers Decl.; Rivers Decl. Exh. B.

60. Ms. Rivers also informed OIA that on June 13, 2016, Plaintiff discussed upcoming political events with the staff of the Bureau of Conciliation and Mediation Services ("BCMS") while at the DTF office.  Rivers Decl.; Rivers Decl. Exh. B.

61. At the time, Plaintiff served as both Deputy Commissioner and Director of BCMS.  Dep. of Pl. at 19.

62. While at the DTF office, Plaintiff provided Ms. Rivers with an emery board promoting her campaign and with campaign literature.  Rivers Decl.

63. While at the DTF office, Plaintiff asked Ms. Rivers to review headshots for her political campaign.  Rivers Decl.

64. On one occasion in the spring or summer of 2016, Plaintiff asked Ms. Rivers for her home address.  Rivers Decl.

65. Ms. Rivers felt obligated to provide Plaintiff her address because Plaintiff was her supervisor.  Rivers Decl.

66. Plaintiff's campaign then sent an invitation for a fundraiser to Ms. Rivers' home address.  Rivers Decl.; Rivers Decl. Exh. C.

67. OIA compared Ms. Rivers' affidavit detailing when Plaintiff was out of the office with the timesheets that Plaintiff certified.  Gullie Decl.; Gullie Decl. Exh. D.

68. OIA's comparison revealed that Plaintiff did not always charge appropriate leaves when out of the office for political events.  Gullie Decl.

69. OIA's comparison also revealed that Plaintiff did not always charge appropriate leaves when conducting non-DTF business while physically present at DTF.  Gullie Decl.

70. When an employee certifies that she worked an entire day, DTF pays the employee without deducting leave.  Gullie Decl.

71. When an employee falsely certifies that she worked an entire day, when in reality she should have deducted leave, the employee has effectively stolen the value of the leave time that she should have charged.

72. Part of OIA's investigation gathered evidence from Administrative Assistant Lisa Surprenant.  Gullie Decl.; Gullie Decl. Exh E; Surprenant Decl.; Surprenant Decl. Exh. A.

73. Ms. Surprenant worked directly for Plaintiff.  Surprenant Decl.

74. On multiple occasions in the spring and summer of 2016, Plaintiff stopped by Ms. Surprenant's desk at DTF to discuss her political campaign.  Surprenant Decl.

75. On one of those occasions, Plaintiff asked Ms. Surprenant if Ms. Surprenant's husband had friended the Facebook account of her political campaign.  Surprenant Decl.; Surprenant Decl. Exh. A.

76. On July 13, 2016, while Ms. Surprenant was at work at DTF, Plaintiff asked her if she received an invitation to her fundraiser for her political campaign, which was held on July 12, 2016. Surprenant Decl.; Surprenant Decl. Exh. A.

77. Ms. Surprenant said no, and Plaintiff became very upset. Surprenant Decl.; Surprenant Decl. Exh. A.

78. This interaction made Ms. Surprenant uncomfortable. Surprenant Decl.

79. On July 14, 2016, Deputy Commissioner Richard Ernst stopped at Ms. Surprenant's desk and asked if Ms. Surprenant needed the address to Plaintiff's campaign. Surprenant Decl.; Surprenant Decl. Exh. A.

80. Ms. Surprenant said no and that she did not participate in or contribute to political campaigns. Surprenant Decl.; Surprenant Decl. Exh. A.

81. This interaction made Ms. Surprenant uncomfortable. Surprenant Decl.

82. On July 14, 2016, Ms. Surprenant wrote a sworn affidavit for the OIA investigation detailing her interactions with Plaintiff and Deputy Commissioner Ernst. Surprenant Decl.; Surprenant Decl. Exh. A.

83. Although Ms. Surprenant recently told Plaintiff and Deputy Commissioner Ernst that Ms. Surprenant had no interest in participating in, or funding, Plaintiff's campaign, Ms. Surprenant received an invitation for Plaintiff's fundraiser at her home address. Surprenant Decl.; Surprenant Decl. Exh. B.

84. On August 4, 2016, Ms. Rivers provided Deputy Commissioner Neri typed notes about Plaintiff's conduct. Neri Decl.; Neri Decl. Exh. G.

85. When handing Deputy Commissioner Neri the notes, Ms. Rivers commented, "There is not enough time in my day to keep a record of the unethical conduct I observe in my

particular location. Richard [Ernst, another Deputy Commissioner] and [Plaintiff] discuss the campaign frequently throughout the day. It never stops." Neri Decl.; Neri Decl. Exh. G.

86. Deputy Commissioner Neri forwarded a scanned copy of the written notes to Michele Somelofske, an Investigator with OIA. Neri Decl.

87. The e-mail in which Deputy Commissioner Neri sent the notes to OIA also included Ms. Rivers' comment about the breadth of Plaintiff's unethical conduct in the workplace. Neri Decl. Exh. G.

88. OIA concluded that Plaintiff conducted her political campaign, in part, physically at DTF and on DTF time. Gullie Decl.

89. Plaintiff testified on April 8, 2022 that she was not aware of the existence of an OIA investigation. Dep. of Pl. at 111.

### G. DTF Terminates Plaintiff

90. OIA briefed Defendant Manion on the results of the investigation. Manion Decl.

91. During that briefing, Defendant Manion learned that the investigation revealed evidence that Plaintiff had, in fact, violated the restrictions about not using DTF time and resources to conduct the campaign. Manion Decl.

92. Based on that briefing of investigative findings, Defendant Manion determined that Plaintiff should be terminated for cause because she violated the restrictions placed on her by the Commissioner of DTF and JCOPE. Manion Decl.

93. Defendant Manion made that decision, in part, because the OIA determination constituted the second time in less than a year an investigative agency found Plaintiff misused DTF time and resources to conduct outside activity. Manion Decl.

94. Defendant Manion informed Defendant Starr that Plaintiff would be terminated for inappropriate use of DTF resources during a political campaign. Starr Decl.; Manion Decl.

95. Defendant Starr drafted a termination letter, which Defendant Manion edited by adding "for cause." Starr Decl.

96. Defendant Boone was on medical leave at the time Plaintiff was terminated. Boone Decl.

97. Defendant Boone did not make the decision to terminate Plaintiff. Boone Decl.

98. When Defendant Manion informed Defendant Boone that she planned on terminating Plaintiff, Defendant Boone agreed with that course of action. Boone Decl.; Manion Decl.

99. On August 24, 2016, Defendant Manion informed Plaintiff she was terminated for cause. Manion Decl.

100. Defendant Starr was present when Defendant Manion terminated Plaintiff. Manion Decl.

101. Plaintiff understood that her employment was at-will because she was an exempt class employee. Manion Decl.

102. Defendant Manion did not provide Plaintiff any details about the cause at that time. Manion Decl.

103. Plaintiff subsequently began telling people that she was terminated for political reasons. Manion Decl.

104. The New York State Executive Chamber urged Defendant Manion to speak with Plaintiff to provide additional details about her termination. Manion Decl.

105. On or about September 2, 2016, Defendant Manion conducted a call with Plaintiff. Manion Decl.

106. Defendant Manion had Defendant Starr in the room as a witness. Manion Decl.

107. In that call, Plaintiff asked whether her termination had anything to do with Plaintiff's campaign for Supreme Court. Manion Decl.

108. Defendant Manion responded, in sum and substance, that the termination occurred because Plaintiff conducted campaign activity at DTF. Manion Decl.

**H.    In Discovery, Plaintiff Fails To Provide Any Basis To Support Her Claim**

109. Plaintiff alleged that the Defendants "terminated Plaintiff for participating in the Judicial Campaign." Dkt. 1 at ¶21.

110. The complaint does not make other allegations of retaliatory action taken by any Defendant. *See* dkt. 1.

111. When given an interrogatory to expound on paragraph 21 of the complaint, Plaintiff wrote, "The Basis for the allegation in Paragraph 21 of the complaint:  On August 24, 2016, Ms. Manion and Mary Starr called Plaintiff into her office and told her she was being fired for cause because of her campaign. . . .  In a telephone call from Ms. Manion and Mary Starr on or about September 2, 2016 to Plaintiff, Nonie stated that Plaintiff was fired for cause for failing to follow direct orders not to engage in campaign activities in the workplace. . . .  She further stated it was not about calls but the appearance and 'discussion all over the place.'. . .  Based upon the general reference to Plaintiff's campaign, with no finding of wrong doing [sic], indicates that Plaintiff was fired merely because she had a campaign." Reiner Decl., Exh. B.

112. Plaintiff testified at her deposition after returning the interrogatories. Dep. of Pl.; Reiner Decl. Exh. B.

14

113.    When Plaintiff was asked at her deposition "what actions did [Defendant Boone] take that were retaliatory to your knowledge," Plaintiff testified "I don't know exactly." Dep. of Pl. at 46.

114.    When Plaintiff was asked what Defendant Manion did, beyond the mere act of termination, Plaintiff testified "I don't recall." Dep. of Pl. at 50–51.

115.    When Plaintiff was asked at her deposition "what did [Defendant Starr] do that was retaliatory," Plaintiff testified "She was present when I was terminated by Nonie Manion. I don't know what else she would have done. I don't know the rest." Dep. of Pl. at 55.

116.    When asked whether she knew how "Defendant Starr was involved in the decision to terminate you," Plaintiff testified "no." Dep. of Pl. at 56.

117.    When asked whether she spoke with Defendant Starr after leaving DTF on August 24, 2016, Plaintiff testified "I don't recall." Dep. of Pl. at 44.


Dated:  Albany, New York
        July 25, 2022

                                      LETITIA JAMES
                                      Attorney General of the State of New York
                                      Attorney for Defendants
                                      The Capitol
                                      Albany, New York  12224

                                      By: s/ Jonathan S. Reiner
                                      Jonathan S. Reiner
                                      Assistant Attorney General, of Counsel
                                      Bar Roll No. 702645
                                      Telephone: (518) 776-2641
                                      Email: jonathan.reiner@ag.ny.gov