UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAMILE SIANO ENDERS,

                                        *Plaintiff,*

                                                            **DECLARATION**

                    -against-
                                                            19-CV-00948
JERRY BOONE, et al.                                         (BKS/CMF)

                                        *Defendants.*

        Margaret Neri, on the date noted below and pursuant to 28 U.S.C. §1746, declares the

following to be true and correct under penalty of perjury under the laws of the United States:

        1.      I am not a Defendant in this action, but I submit this declaration in support of the

Defendants' motion for summary judgment.

        2.      This declaration is based upon my personal knowledge and my review of the

records made and maintained by the New York State Department of Taxation and Finance ("DTF")

in the regular course of business.

        3.      I served as the Deputy Commissioner and Ethics Officer of the DTF at all times

relevant to this action.

        4.      I am an attorney licensed to practice in the State of New York.  Prior to serving as

Deputy Commissioner and Ethics Officer, I served as an attorney in the Office of Counsel at DTF.

**A.    Plaintiff's Approval To Campaign For Supreme Court In 2016.**

        5.      In March of 2016, Plaintiff requested permission from both DTF and the Joint

Commission on Public Ethics ("JCOPE") to conduct a campaign for New York State Supreme

Court in 2016.

1

6. Plaintiff formally requested approval from DTF via e-mail on March 28, 2016 to Commissioner Jerry Boone, a Defendant in this action. Commissioner Boone forwarded that e-mail to me on March 29, 2016 with a recommendation for approval. I forwarded that e-mail to John Harford—JCOPE's Special Counsel and Ethics Director—with Plaintiff and Defendant Boone cc'd on March 29, 2016, and my e-mail to Mr. Harford indicated that both Defendant Boone and I approved the request to conduct the 2016 campaign subject to specific restrictions. A true and correct copy of this e-mail chain is attached to this declaration as **Exhibit A**.

7. In Plaintiff's request, she specifically wrote to Defendant Boone that "Mr. Hareford [sic] mentioned two opinions 98-12 and 16-02 that discuss a state employee and political fundraising activities. In short a state employee subject to public office [sic] law § 74 cannot solicit funds directly from . . . any one [sic] they supervise as a state employee." Exhibit A.

8. The specific restrictions included a "Reminder: Civil Service Law section 107 prohibits any and all political activity in the workplace"; "All activities must be done on the employee's own time"; and "No State resources of any type may be used to accomplish your outside activity." Exhibit A.

9. On March 29, 2016, Mr. Harford sent Plaintiff a letter granting approval on behalf of JCOPE, and Mr. Harford cc'd me on that letter. A true and correct copy of that letter is attached to this declaration as **Exhibit B**. Mr. Harford explicitly told Plaintiff "subordinate employees may not participate in your outside activity." Exhibit B. Further, Mr. Harford indicated that Plaintiff may not use any State resources, including "computers or support staff." The letter continued, the "law also prohibits the use of one's official State position to coerce, intimidate, or otherwise influence State employees to give money or service or any valuable thing for any political purpose

2

or influence the political action of any person." Exhibit B. The JCOPE approval letter explicitly cited Advisory Opinion 98-12.

10.     On April 1, 2016, Defendant Boone and I met with Plaintiff to discuss the restrictions on her activity.  At that meeting, Defendant Boone expressed concern that the campaign would interfere with Plaintiff's duties as Deputy Commissioner at DTF.  Defendant Boone asked Plaintiff to be mindful of the fact that she would be highly visible both within DTF and to the public at large.  Defendant Boone also reminded Plaintiff that there is increased scrutiny of state employees engaging in political activity.  Plaintiff indicated that she could conduct the campaign entirely outside of DTF hours.

11.     On April 5, 2016, I sent an e-mail to Plaintiff with Defendant Boone cc'd recapping our April 1, 2016 meeting.  Attached as **Exhibit C** is true and correct copy of that e-mail.  In that e-mail, I quoted State Ethics Commission Advisory Opinion 93-9 to Plaintiff:  "'One area of particular concern for those seeking elected office is the abuse of State time and resources. . . . The law requires that the campaigns be run on an employee's own time.  No state resources of any type, including . . . support staff assistance can be used in the furtherance of the campaign.'" Exhibit C.

12.     A true and correct copy of New York State Ethics Commission Advisory Opinion 98-12—which Plaintiff cited in Exhibit A and Mr. Harford cited in Exhibit B—is attached hereto as **Exhibit D**.  Advisory Opinion 98-12 reads, in pertinent part, that a State employee may not conduct "campaign activities from a State office or during State business hours unless leave is taken," and "no State employee may solicit from subordinates, as this practice is strictly forbidden by Civil Service Law § 107." Exhibit D at 5.

13.     A State employee's time is a State resource.

3

**B.      Plaintiff's Violation Of The Prohibition Against Campaigning At DTF And Using DTF Resources.**

14.      Plaintiff failed to abide by the orders not to campaign at DTF and on DTF time.

15.      In early April 2016, I asked Lynn Rivers—Plaintiff's administrative assistant—to keep track of Plaintiff's campaign activities while at DTF.

16.      I was neither asked nor directed by Defendants Boone, Manion, or Starr to get Ms. Rivers to provide information on Plaintiff.  I took that action in my own capacity as Ethics Officer based upon my concerns that Plaintiff was flouting the ethical restrictions placed on her.

17.      Ms. Rivers provided me typed notes about Plaintiff's activities, which I reviewed and provided to DTF's Office of Internal Affairs.

18.      On June 2, 2016, an attorney from the Office of Counsel forwarded me a campaign e-mail that Plaintiff's campaign had sent to the attorney's DTF e-mail address.  In turn, I forwarded the Director of DTF's Office of Internal Affairs ("OIA").  A true and correct copy of those e-mail is attached as **Exhibit E**.

19.      On June 2, 2016, I sent an e-mail to Plaintiff to inquire why she was sending political e-mails to State e-mail addresses.  Plaintiff responded by speculating that her campaign sent an e-mail to a bar association and that "[m]aybe some members use their state agency email addresses for [the] women's bar association membership."  A true and correct copy of that e-mail exchange is attached hereto as **Exhibit F**.

20.      On August 4, 2016, Ms. Rivers provided me typed notes about Plaintiff's conduct. When handing me the notes, Ms. Rivers commented "There is not enough time in my day to keep a record of the unethical conduct I observe in my particular location.  Richard [Ernst, another Deputy Commissioner] and [Plaintiff] discuss the campaign frequently throughout the day.  It

4

never stops." I forwarded a scanned copy of the written notes to Michele Somelofske, an Investigator with OIA, and memorialized the Ms. Rivers' comment in the e-mail containing the typed notes. A true and correct copy of that e-mail is attached to this declaration as **Exhibit G**.

21. Based upon the information that I reviewed—including but not limited to Ms. Rivers' typed notes—I believe that Plaintiff violated the restrictions (1) not to campaign at DTF, (2) not to campaign on DTF time, (3) not to utilize DTF employees in her campaign, and (4) not to solicit donations from subordinates.

22. I accordingly ask the Court to grant Defendants' motion for summary judgment in its entirety.

MARGARET NERI

Dated: July _13_, 2022
_Albany_, New York

5

# Exhibit A

**Surprenant, Lisa M (TAX)**

| | |
|---|---|
| **From:** | Neri, Margaret (TAX) |
| **Sent:** | Tuesday, March 29, 2016 1:14 PM |
| **To:** | Harford, John (JCOPE) |
| **Cc:** | Siano.Enders, Camille (TAX); Neri, Margaret (TAX) |
| **Subject:** | FW: request for approval for Outside activity |
| **Attachments:** | DOC000.pdf; Supplement to JCOPE Outside Activity Approval Form.docx; NYS Const Art VI  Judiciary.docx |

Good afternoon John

Attached please find a request pursuant to 19 NYCRR Part 932 from Camille Siano Enders, Director of the Bureau of Conciliation and Mediation Services at the Department of Taxation and Finance, to run for elected office, namely Justice of the Supreme Court in the 4th Judicial District.

This request has been approved by me, as the Department's Ethics Officer, as well as Commissioner Jerry Boone, subject to the following restrictions:
1. Employee is obligated to refer to the Department's Outside Activity Policy to become familiar with the restrictions that apply to outside activities.  The employee's DTF employment is to be considered her primary employment and this outside activity is to occur outside of her DTF workday. Leave time must be charged for any work or activity done during the normal work day for this outside activity.
2. All activities must be done on the employee's own time and all travel must be separate and apart from travel associated with Department work.
3. Employee must not use any Tax Department information in the course of this outside activity.
4. No State resources of any type may be used to accomplish your outside activity. This includes telephones, office supplies, copying machines, computers and support assistance.
5. Employee must not use her DTF title and position to gain any advantage in this outside activity.
6. Reminder: Civil Service Law section 107 prohibits any and all political activity in the workplace.

Please call if you have any questions.
Sincerely,
Peg Neri

**Margaret Neri**
Deputy Commissioner, Taxpayer Rights Advocate
& Ethics Officer

New York State Department of Taxation and Finance
W A Harriman Campus, Building 9, Albany NY 12227
(518) 530-5303 | Margaret.Neri@tax.ny.gov
www.tax.ny.gov

**From:** Boone, Jerry (TAX)
**Sent:** Tuesday, March 29, 2016 11:55 AM

1

**To:** Neri, Margaret (TAX) <Margaret.Neri@tax.ny.gov>
**Subject:** FW: request for approval for Outside activity

Peg,

As per our conversation, I recommend approval of this request subject to the various conditions we discussed being made part of the approval.

Jerry
**Jerry Boone**
Commissioner

NYS Department of Taxation and Finance.
W.A. Harriman Campus, Albany, NY 12227
(518) 530-4444 | jerry.boone@tax.ny.gov
www.tax.ny.gov


**From:** Siano.Enders, Camille (TAX)
**Sent:** Monday, March 28, 2016 12:11 PM
**To:** Boone, Jerry (TAX) <Jerry.Boone@tax.ny.gov>
**Subject:** request for approval for Outside activity

I spoke with Peg this morning who advised that I may submit my request by email because the electronic AD 330 is not operational.   She said she will be in the office until about 1:30pm.

The outside activity for which I am  requesting approval is to run for judicial office, specifically Supreme Court Justice in the 4th Judicial District.  I spoke with John Hareford, Special Counsel, at JCOPE on March 25, 2016 and he advised me that he saw no problem with JCOPE approving the request, once it was approved by our agency.  He indicated that the request should be sent directly to him by email and he would be able to expedite the request.

This activity would consist of campaigning for judicial office in the 11 counties  of the 4th judicial district.  The office is defined and the process is described in NYS Cons Art VI§ 6, Election Law § 6-124 and § 6-126.  The candidates that will be on the ballot for the November election are chosen by nominating convention in September.  Leading up to that time candidates must attend interviews, meetings and political functions in the district, raise funds and advertise and otherwise campaign publicly.   All of these activities should be on nights and weekends.  There may be occasional need for time off for travel purposes.

Mr. Hareford mentioned two opinions 98-12 and 16-02 that discuss a state employee and political fundraising activities.  In short a state employee subject to public office law § 74 cannot solicit funds directly from any sources that may have business for them or any one they supervise as a state employee.  This does not include mass mailings that may have to end up directed to such a source.  In addition, Judicial Campaign ethics rules requires that a judicial candidate not solicit or raise funds themselves but that they must have a committee for that purpose ( 22 NYCRR 100.5 [A][1][h]; 100:5[A][5]; 100.5[A][4][c]).   Therefore Mr. Hareford felt that there would be no conflict due to the committee requirement.

Please let me know if you need any further information to consider this request.  And please forward to Peg your determination and I will prepare the request for JCOPE in the meantime on their form.


Thank you
Camille

**Camille Siano Enders**

2

Deputy Commissioner
Director Bureau of Conciliation and Mediation Services

NYS Department of Taxation and Finance
W.A. Harriman Campus, Albany, NY 12227

(518) 530-4628 | camille.siano.enders@tax.ny.gov

www.tax.ny.gov

3

ENDERS -- 000572

# **Exhibit B**



DANIEL J. HORWITZ
CHAIR

MARVIN E. JACOB
SEYMOUR KNOX, IV
HON. EILEEN KORETZ
GARY J. LAVINE
HON. MARY LOU RATH
DAVID A. RENZI
MICHAEL A. ROMEO, SR.
HON. RENEE R. ROTH
MICHAEL K. ROZEN
DAWN L. SMALLS
GEORGE H. WEISSMAN
MEMBERS

NEW YORK STATE
JOINT COMMISSION ON PUBLIC ETHICS

540 BROADWAY
ALBANY, NEW YORK 12207
www.jcope.ny.gov

PHONE: (518) 408-3976
FAX: (518) 408-3975

March 29, 2016

Via E-Mail

Camille Siano-Enders
Deputy Commissioner
New York State Department of Taxation & Finance
W.A Harriman Campus, Bldg. 9
Albany, N.Y. 12227
Camille.Siano.Enders@tax.ny.gov

Dear Ms. Siano-Enders:

On behalf of the Joint Commission on Public Ethics ("Commission"), I am writing to inform you that your request for approval of your outside activity to seek election as a Justice of the Supreme Court of the State of New York has been *granted*.

Please be advised that actions associated with your outside activity are not permitted during State work hours and should not interfere with your work responsibilities. No State resources of any type may be used to accomplish your outside activity. This applies to telephones, office supplies, postage, photocopying machines, computers or support staff assistance. Additionally, subordinate employees may not participate in your outside activity. Finally, this approval in no way relieves you of your obligations to comport yourself in accordance with the mandates in Sections 73 and 74 of the Public Officers Law as well as Part 932 of Title 19 of the New York Codes, Rules and Regulations.

Further, as you seek election, there are certain ethical considerations which apply. Campaigns must be run on an employee's own time, and an employee's State position should not be used to gain any special advantage. Moreover, care must be taken to ensure that political literature and speeches do not indicate, to any degree, that the agency for which the employee works endorses the employee's campaign or positions. Thus, any campaign biography must be restricted to include only the employee's State title and description of his or her State position. A separate entity should be formed for the receipt of campaign contributions.

In addition, you must refrain from soliciting a person or entity which you have substantial reason to believe will have dealings with you in your official capacity[1] within the foreseeable future. You also must not solicit person or entity with which you have or had dealings in your official capacity. Notwithstanding the foregoing, you may allow your name to be used in an untargeted mass mailing, even if some of the mailed documents reach individuals or entities which had or have matters before you. If you have appropriately solicited a political contribution from a person or entity and subsequently the person or entity has a matter before you in your official capacity, you must recuse yourself from the matter. This recusal requirement is imposed for a reasonable period of time based upon the circumstances and may vary depending on the extent of the contribution. *See* Advisory Opinion No. 98-12.

It is also important to note that Civil Service Law §107 contains safeguards for State employees against discriminatory practices based on political affiliations. No appointments, selections to, or removals from an office or employment can be impacted or influenced by political opinions or affiliations. The law also prohibits the use of one's official State position to coerce, intimidate, or otherwise influence State employees to give money or service or any valuable thing for any political purpose or influence the political action of any person or body or to interfere with any election. This prohibition provides that State employees may not be compelled or induced to pay or promise to pay any political assessment or contribution.

Should you decide to be "on leave" during your campaign, please be advised that an employee "on leave" status remains a State employee subject to the ethics law provisions of Public Officers Law §§73 and 74. *See* Advisory Opinion No. 90-01. Thus, you would be required to comply with these ethics provisions while you are campaigning and not engage in any conduct that is in conflict or that could give rise to the appearance of a conflict of interest with your duties and responsibilities as a Council member.

Should you wish to engage in a different outside activity or if the nature of your approved outside activities substantially changes, then you must submit a new request for approval.

Sincerely,

John P. Harford
Special Counsel and Director of Ethics and
Lobbying Guidance

cc:   Margaret Neri, Deputy Commissioner
      Taxpayer Rights Advocate & Ethics Officer
      New York State Department of Taxation and Finance
      Margaret.Neri@tax.ny.gov

---

[1] "Official capacity," as that term is used herein, refers to your job as an employee of the New York State Department of Taxation and Finance

# Exhibit C

**Neri, Margaret (TAX)**

| | |
|---|---|
| **From:** | Neri, Margaret (TAX) |
| **Sent:** | Tuesday, April 05, 2016 10:53 AM |
| **To:** | Siano.Enders, Camille (TAX) |
| **Cc:** | Boone, Jerry (TAX) |
| **Subject:** | Recap of meeting |

Good morning Camille

I just want to recap the discussion we had with Commissioner Boone on Friday, April 1, 2016. The purpose of our meeting was to discuss the approval of your outside activity request, namely your intent to run for Justice of the Supreme Court in New York's Fourth Judicial District. As the Department's Ethics Officer, I approved your request on March 29th. The Joint Commission on Public Ethics approved it later that same day.

Commissioner Boone's first concern was whether your election activities would impact your responsibilities at DTF. You stated that most election activities would be taking place during the evenings and on weekends. You expected to charge your leave accruals if you needed to take time for traveling to the most northern locations in the district.

Next, Commissioner Boone stated that in your position as a DTF Deputy Commissioner and Director of BCMS, you are highly visible here at DTF. In your run for this judicial seat, you will be highly visible to the public as well. In this regard, Commissioner Boone stated that it was important that you properly handle the appearance of a conflict of interest. He asked how you intended to deal with the appearance of a conflict between your DTF job and your election activities, specifically about use of your cellphone for this outside activity. You replied that you were looking into a way to manage your cell phone records to differentiate the calls made and received. You mentioned that you were currently using a notebook to track the cellphone calls you received from the Schenectady Library Board. This is another outside activity for which you have approval.

I pointed out to you that you should not be receiving phone calls pertaining to the Library Board during your DTF work hours. Such phone calls are only appropriate before or after work or during your lunch break. This is a rule that applies to all DTF employees. My recommendation to you on this point was that you should obtain a separate cellphone to handle all phone messages and internet communications pertaining to your judicial election. I suggested that you keep the cellphone in your car and access it before and after your DTF work hours as well as on your lunch break. In this way, you will insure that your judicial election activities are not conducted at DTF on State time.

Commissioner Boone stated that there has been increased scrutiny of political activity by those in State service. Again he reiterated his recommendation that you keep the election activities completely separate from your DTF work.

Lastly, I refer you to a State Ethics Commission opinion that is directly on point.

**Advisory Opinion No. 93-9:**   Application of Public Officers Law §74 to a State employee who is seeking elective office.
*Section 74(3)(d) prohibits the requesting employee from using his State position to secure any unwarranted privileges for himself or his outside employer or other entity. One area of particular concern for those seeking elected office is the*

1

ENDERS -- 000568

*abuse of State time and resources. The Commission recognizes that seeking elected office may require the expenditure of a great deal of such time and resources. The law requires that campaigns be run on an employee's own time.[8] No State resources of any type, including telephones, office supplies, postage, photocopying machines or support staff assistance, can be used in the furtherance of the campaign for either position.*

I wish you the best in this outside activity.
Let me know if you have any questions or concerns.
Peg

2

# Exhibit D

# New York State
# Ethics Commission

---

**Advisory Opinion No. 98-12:**    Application of Public Officers Law §74 to State employees who work on political campaigns, including fundraising.

---

## Introduction

The State Ethics Commission ("Commission") has been asked by a State employee who is the supervisor of several units whether he may work on the political campaign of a candidate for elected office and whether there are any restrictions on his engaging in political activities. While this opinion responds to that inquiry, it should be viewed as a guide to those State officers and employees who choose to participate in political activities.

Pursuant to the authority vested in it by Executive Law §94(15), the Commission renders its opinion that the State employee may work on political campaigns, but his activities are subject to certain restrictions arising from his obligation to avoid a conflict of interest or the appearance of a conflict in violation of Public Officers Law §74.

Specifically, the employee may not solicit funds from any individual or business entity (1) which currently has matters before him or before the units he supervises, (2) which he has substantial reason to believe will have matters before him or such units in the foreseeable future, or (3) which had matters before him or such units in the last twelve months; provided, however, that he may participate in mass mailings, even if some of the letters will reach individuals or business entities from which he otherwise could not solicit funds.[1] If an entity properly solicited by him makes a contribution and then has a matter before him or a unit he supervises, he should recuse himself if the matter arises within one year of the contribution, although the length of the period may vary depending upon the circumstances. Finally, the employee may not use his official title, position or authority in his fundraising efforts or solicit from subordinates in his units. Nor may he use State resources for political purposes, engage in political activities in a State office, or engage in such activities during business hours unless leave is taken.

## Applicable Law

The State's Code of Ethics, contained in Public Officers Law §74, prohibits a State officer or employee from engaging in activities having a conflict of interest or the appearance of a conflict with respect to his or her public responsibilities. The rule regarding to conflicts of interest is provided in Public Officers Law §74(2):

No officer or employee of a state agency . . . should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest.

Following the rule with respect to conflicts of interest, Public Officers Law §74(3) provides standards of conduct which address actual as well as apparent conflicts of interest. Of relevance to this inquiry are the following:

(d) No officer or employee of a state agency . . . should use or attempt to use his official position to secure unwarranted privileges or exemptions for himself or others.

. . . .

(f) An officer or employee of a state agency . . . should not by his conduct give reasonable basis for the impression that any person can improperly influence him or unduly enjoy his favor in the performance of his official duties, or that he is affected by the kinship, rank, position or influence of any party or person.

. . . .

(h) An officer or employee of a state agency . . . should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts in violation of his trust.
These provisions address not only actual conflicts of interests, but also conduct that gives the impression that a conflict exists. The law is intended to enhance the public's trust and confidence in government through the prevention of corruption, favoritism, undue influence and abuse of official position.

<strong>Discussion</strong>

The Commission has not previously issued a formal opinion describing the political activities in which a State officer or employee may engage. This opinion, therefore, offers guidance on this important subject.[2]

The Commission has previously issued several opinions concerning State employees who desire to run for elective office. Significantly, it has held that Public Officers Law §74 should not be read to preclude State officers and employees who conduct business with the general public from participating in the political process (Advisory Opinion No. 92-16). It is the Commission's view that there is no fundamental prohibition which bars a State employee from being elected to and holding public office (Advisory Opinion No. 93-9). However, the Commission has recognized that there are instances when a State official's holding of an elected office may necessitate recusal from certain matters in order to avoid even the appearance of a conflict of interest. And in some unusual situations, where the conflict is direct, a State employee may be prohibited from seeking a particular elected office (See Advisory Opinion No. 92-16).

The Commission has addressed engaging in political activities other than running for office only by regulation. The Commission's regulations governing outside activities, found at 19 NYCRR Part 932, provide that an individual who is serving in a policymaking position may not serve as a member of any political party committee or as an officer of any political party or "political organization" (19 NYCRR Part 932.2). A "political organization" is defined to mean only an

"organization that is affiliated with or subsidiary to a political party . . . ." It does not include "campaign or fundraising committees" (19 NYCRR Part 932.1[f]).

Thus, the Commission has, in its regulations, considered the political activities of State employees, and has permitted all employees, whether or not policymakers, to engage in political campaigns, including fundraising. In short, there is no fundamental prohibition to a State employee's engaging in these activities.

This does not mean, however, that a State employee's political efforts are without restriction. The standards of Public Officers Law §74 remain applicable to an employee working on behalf of a candidate or in any other political endeavor.

Advisory Opinion No. 97-28 considered the restrictions imposed on a State employee who wished to engage in charitable fundraising in his personal capacity. In that opinion, the Commission distinguished the employee's solicitation of funds from which he would personally receive no benefit from solicitations made for personal gain, which the Commission had prohibited in Advisory Opinion 94-16. It went on to describe the restrictions imposed in the context of a State employee's soliciting for charitable purposes.

Political solicitation has many of the same characteristics as charitable contributions.[3] In both circumstances, the individual employee receives no direct personal benefit. In the charitable context, the solicitation is for an organization the employee wishes to support; in the political context, it is for an issue or a candidate that the employee wishes to support. However, there is a greater danger in the political context than in the charitable context that fundraising may raise suspicion among the public that the public servant may engage in acts in violation of his trust.

Advisory Opinion No. 97-28 provides some guidance in considering the matter of political fundraising. In that opinion, it was determined that the employee, whose State work involved handling specific cases, was barred from soliciting from those business entities or individuals where there were open pending cases in which he was involved. In addition, he was required to refrain from soliciting from those with whom he had dealings in the past year. To do so could create the appearance that he was using a relationship developed in his public position to seek a contribution, or that a contribution in such circumstances was a reward for his public activities.

Moreover, if an entity from which he accepted a contribution subsequently had a matter that came before him, he was required to recuse himself if the matter arose within one year of his acceptance of the contribution. This recusal requirement[4] was intended to avoid the perception that the State employee's public actions were related to his receipt of a contribution. A one year period after the acceptance of a contribution was determined to be sufficient in most instances. However, the Commission noted that this period may be longer in certain circumstances.[5]

Finally, the Commission prohibited the State employee from using his official title, position or authority in his fundraising efforts and from soliciting from subordinates in his unit, thereby preventing him from his abusing his public position.

Since, as noted, the methods of charitable and political fundraising share many similarities, these are guidelines which should be followed by employees engaged in raising money for political purposes, including campaigns. How these guidelines are applied to various State employees will depend upon their positions and responsibilities.

In Advisory Opinion No. 97-28, the Commission was considering a State employee who had immediate oversight over specific cases. The employee who requested this opinion supervises several units.

While the Commission finds the principles set forth in Advisory Opinion No. 97-28 applicable to the political campaign arena, they will be applied differently depending upon the different level of responsibilities of the particular State employee involved.

The employee who requested Advisory Opinion No. 97-28 was prohibited from soliciting from any person or entity which had a matter pending before him. Where, as here, an employee is the supervisor of a unit or units, the prohibition extends as well to any person or entity that has a matter pending before the unit or units for which he is responsible. Such a matter is, at least, indirectly before him, and his personal involvement is always a possibility.

For the same reasons, a State employee should refrain from soliciting a person or entity which he has substantial reason to believe will have dealings with him within the foreseeable future. Again, in the case of a supervisor, this restriction is extended when there is substantial reason to believe that a person or entity will have dealings with the unit or units under his supervision.

A State employee also should not solicit persons or entities that had dealings with him (or, if a supervisor, the unit or units he supervises) within the past twelve months. Such solicitations create an implication of the use of a relationship developed in his public position for political purposes. Furthermore, there is a risk that a contribution in such circumstances could be perceived as a reward for his public activities.

In prohibiting these solicitations, the Commission is addressing only the solicitations targeted to individuals or entities under the jurisdiction of the unit in which the employee works. The same conflicts do not arise when a State employee participates or allows his name to be used in an untargeted mass mailing, even if some of the mailed documents reach individuals or entities which had or have matters before him or his unit. Thus, his participation would be permissible.[6]

If a State employee has appropriately solicited a political contribution (other than by a mass mailing) from a person or entity and subsequently the person or entity has a matter before him or the unit or units he supervises, he must recuse himself from the matter. Any agency employees who would ordinarily report to him must report to a different supervisor. This recusal requirement is imposed for a reasonable period of time based upon the circumstances. While a one year period was adopted in Advisory Opinion No. 97-28, the exact time period may vary depending on the extent of the contribution. A State employee facing this situation is urged to seek further advice.

In addition to the above restrictions, no State employee may use his official title, position or authority in any campaign activities, including untargeted mass mailings. No State resources of any type may be used in furtherance of these activities, including, but not limited to, telephones, office supplies, postage, photocopying machines, computers and support staff (See Advisory Opinion No. 93-9). Nor may campaign activities be conducted from a State office or during State business hours unless leave is taken. Finally, no State employee may solicit from subordinates, as this practice is strictly forbidden by Civil Service Law §107 (See also Election Law §17-158).

At all times the State employee shall avoid conduct which promotes the perception that his actions as a State employee may be influenced by his political activities.

## Conclusion

The State employee, in working on the political campaign of a candidate for elective office, must observe the restrictions set forth in this opinion.

This opinion, until and unless amended or revoked, is binding on the Commission in any subsequent proceeding concerning the person who requested it and who acted in good faith, unless material facts were omitted or misstated by the person in the request for opinion or related supporting documentation.

All concur:

Paul L. Shechtman,
Chair
Evans V. Brewster
Henry G. Gossel
O. Peter Sherwood,
Members

Dated: October 20, 1998

---

## Endnotes

1. Throughout this opinion, the term "funds" includes in-kind contributions.

2. This opinion is applicable to State officers and employees but not to statewide elected officials running for re-election. Such officials are in a unique position, as they both hold elected office and are simultaneously engaged in political activities. Their fundraising activities are subject to the Election Law.

Since unpaid and per diem members of public benefit corporations, authorities, boards, commissions and other multi-member bodies are State employees for purposes of Public Officers Law §74, this opinion applies to them as well. However, the Commission recognizes that the

nature of their duties is different, and, therefore, that the application of the opinion may be different to reflect their distinctive ethical obligations. The Commission is available to offer advice based upon the specific responsibilities of these officials.

The opinion is based only on Public Officers Law §74. Some employees may have additional restrictions. For example, the policy of the agency for which they work may contain additional restrictions; employees on federally funded lines are subject to the restrictions of the Hatch Act (5 U.S.C. §7323).

3. In considering what constitutes a political "solicitation," the Commission looks to the federal definition, where the term means "to request or otherwise encourage donations or other support either through person-to-person contact or through the use of one's name or identity in correspondence or by permitting its use by others." (5 C.F.R. §2635.808.) As discussed below, however, our opinion, like federal law, does not bar participation in mass mailings (See footnote 6).

4. After recusal, the State employee could play no role, nor could he discuss the matter with the individual to whom the matter is assigned.

5. For example, the Commission noted that the potential for conflict increases as the amount of the contribution increases.

6. In determining what constitutes a permissible mass mailing, the Commission looks to the federal definition, found at 5 C.F.R. 2635.808, which describes this activity as: "[The] solicitation of funds through the media or through either oral remarks, or the contemporaneous dispatch of like items of mass-produced correspondence, if such remarks or correspondence are addressed to a group consisting of many persons, unless it is known to the employee that the solicitation is targeted at subordinates or at persons who are prohibited sources . . . ."

# Exhibit E

**Somelofske, Michele (TAX)**

| | |
|---|---|
| **From:** | Hamel, William (TAX) |
| **Sent:** | Monday, June 06, 2016 8:10 AM |
| **To:** | Somelofske, Michele (TAX) |
| **Cc:** | Gullie, Scott (TAX) |
| **Subject:** | FW: Camille Siano Enders for Supreme Court |

Time to reopen this matter.

# William D. Hamel
Director – Office of Internal Affairs

**New York State Department of Taxation and Finance**
W A Harriman Campus, Building 8, Rm 938
Albany NY 12227
(518) 451-1566 office
(518) 435-8454 fax
William.Hamel@tax.ny.gov

This communication may contain confidential and/or legally privileged information. It is intended only for the individuals named as recipients. If you are not an intended recipient you are not authorized to disseminate, distribute or copy this communication. If you've received this communication by mistake, please notify the sender immediately and delete or destroy it, as appropriate.

**From:** Neri, Margaret (TAX)
**Sent:** Friday, June 03, 2016 4:17 PM
**To:** Hamel, William (TAX) <William.Hamel@tax.ny.gov>
**Subject:** FW: Camille Siano Enders for Supreme Court

FYI

**Margaret Neri**
Deputy Commissioner, Taxpayer Rights Advocate
& Ethics Officer

DEFS00912

1

**New York State Department of Taxation and Finance**
W A Harriman Campus, Building 9, Albany NY 12227
(518) 530-5303 | Margaret.Neri@tax.ny.gov
www.tax.ny.gov

**From:** Liebman, Deborah R (TAX)
**Sent:** Thursday, June 02, 2016 3:01 PM
**To:** Neri, Margaret (TAX) <Margaret.Neri@tax.ny.gov>
**Subject:** FW: Camille Siano Enders for Supreme Court

**From:** Camille Siano Enders for Supreme Court [mailto:CamilleEndersForSupremeCourt=gmail.com@mail65.suw11.mcdlv.net] **On Behalf Of** Camille Siano Enders
for Supreme Court
**Sent:** Thursday, June 02, 2016 2:14 PM
**To:** Liebman, Deborah R (TAX) <Deborah.Liebman@tax.ny.gov>
**Subject:** Camille Siano Enders for Supreme Court

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

DEFS000913

Dear Friend,

During her 20-year tenure practicing the law as a highly trusted member of the legal community, Camille Siano Enders has been a champion for equal access to legal representation. She proudly served as a fair and efficient judge. Camille Siano Enders is running for State Supreme Court Justice to continue her calling as the fair and dedicated public servant we all know her to be.

Camille has fought both professionally and privately to ensure access to justice through our court system for all citizens. In 1995 she was a founding member of the Capital Districts Women's Bar Association Legal Project, Inc. The program provided representation to victims of domestic violence and provided free legal consultations to the public. Today the legal project has 12 different programs, all of which provide pro bono legal services to the public, often reaching individuals that would otherwise not be able to obtain legal assistance.

An experienced litigator and seasoned leader, Camille has a unique combination of skills. Her time spent at the New York State Workers' Compensation Board offered the opportunity to gather experience in roles such as conciliator/mediator, administrative law judge, appeal author, team leader as well as Deputy Director of the statewide Appeals Office. Her four years spent as Duanesburg Town Justice offered the opportunity for Camille to preside over civil and small claims actions, summary proceedings, criminal and traffic cases, including jury and bench trials.

For the last three years, Camille has worked for the New York State Department of Taxation and Finance. During this time she has served as Taxpayer Advocate and most recently as Director of the Bureau of Conciliation and Mediation Services. She juggled these responsibilities all while maintaining her 24 hour on call status for emergency proceedings in her position of Duanesburg Town Justice. As a Supreme Court Justice, Camille Siano Enders will continue her long track record of diligence, compassion and integrity.

DEFS000914

DEFS000915

In pursuing her goal to become Supreme Court Justice, Camille will need to increase her name recognition. Although she is well known and respected throughout the Capital District, Camille must expand her reputation through out the eleven counties that make up the Fourth Judicial District (Clinton, Essex, Franklin, Fulton, Hamilton, Montgomery, Saratoga, Schenectady, St. Lawrence, Warren and Washington). She plans to do this through TV, radio, mailings, internet advertising and a grass roots field program. This task cannot be accomplished without your support.

Pledge your support to Camille Siano Enders this upcoming election by sending your campaign contribution to the address below. No donation is too small, and all donations are greatly appreciated. Thank you in advance for your contribution to her campaign!  If you are interested in volunteering, please respond to this email.

Send to: Stacey Dailey Roussin, Treasurer, 178 Tygert Road, Voorheesville, New York 12186

Sincerely,

Rebecca Yates, Campaign Consultant

Camille Enders For Supreme Court

518-859-5669

Our mailing address is:

DEFS000916

Camille Siano Enders For Supreme Court
Stacey Dailey Roussin, Treasurer
178 Tygert Road
Voorheesville, NY 12186

Want to change how you receive these emails?

You can update your preferences or unsubscribe from this list

This email was sent to deborah.liebman@tax.ny.gov

*why did I get this?*   unsubscribe from this list   update subscription preferences

Camille Siano Enders for Supreme Court · 178 Tygert Road · Voorheesville, NY 12186 · USA

DEFS000917

# Exhibit F

**To:** Siano.Enders, Camille (TAX)[Camille.Siano.Enders@tax.ny.gov]
**From:** Neri, Margaret (TAX)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)'CN=RECIPIENTS/CN=C0218610B9B542DF89DBD30517DF9F2F-NERI, MARGA]
**Sent:** Fri 6/3/2016 4:19:30 PM Eastern Daylight Time
**Subject:** RE: Political email

Camille
Political solicitations to state email addresses is prohibited. Please take steps to 'scrub' the email lists you use in this way.
Peg
**Margaret Neri**
Deputy Commissioner, Taxpayer Rights Advocate
& Ethics Officer

**New York State Department of Taxation and Finance**
W A Harriman Campus, Building 9, Albany NY 12227
(518) 530-5303 | Margaret.Neri@tax.ny.gov
www.tax.ny.gov

**From:** Siano.Enders, Camille (TAX)
**Sent:** Thursday, June 02, 2016 4:10 PM
**To:** Neri, Margaret (TAX) <Margaret.Neri@tax.ny.gov>
**Subject:** RE: Political email
Hi Peg,
I know that we were sending out an email to the Capital District Women's Bar Association email list. Maybe some members use their state agency email addresses for women's bar association membership?
Camille
**Camille Siano Enders**
Deputy Commissioner
Director Bureau of Conciliation and Mediation Services
NYS Department of Taxation and Finance
W.A. Harriman Campus, Albany, NY 12227
(518) 530-4628 | camille.siano.enders@tax.ny.gov
www.tax.ny.gov

**From:** Neri, Margaret (TAX)
**Sent:** Thursday, June 02, 2016 3:43 PM
**To:** Siano.Enders, Camille (TAX) <Camille.Siano.Enders@tax.ny.gov>
**Subject:** Political email
Hi Camille
Are you aware that an email blast from your campaign has been received at NYS agency mailboxes?
Peg
**Margaret Neri**
Deputy Commissioner, Taxpayer Rights Advocate
& Ethics Officer

**New York State Department of Taxation and Finance**
W A Harriman Campus, Building 9, Albany NY 12227
(518) 530-5303 | Margaret.Neri@tax.ny.gov
www.tax.ny.gov

# Exhibit G

**Somelofske, Michele (TAX)**

| | |
|---|---|
| **From:** | Neri, Margaret (TAX) |
| **Sent:** | Thursday, August 04, 2016 10:41 AM |
| **To:** | Somelofske, Michele (TAX) |
| **Subject:** | FW: scanned doc |
| **Attachments:** | notes.pdf |

Good morning Michele

Attached please find 2 pages of notes that were given to me yesterday by Lynn Rivers.

FYI – Lynn's direct comment to me was " There is not enough time in my day to keep a record of the unethical conduct I observe in my particular location. Richard and Camille discuss the campaign frequently throughout the day. It never stops."

Regards,

Peg

**Margaret Neri**
Deputy Commissioner, Taxpayer Rights Advocate
& Ethics Officer

**New York State Department of Taxation and Finance**
W A Harriman Campus, Building 9, Albany NY 12227
(518) 530-5303 | Margaret.Neri@tax.ny.gov
www.tax.ny.gov

DEFS000766