**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAMILLE J. SIANO ENDERS,

                           Plaintiff,                  1:19-cv-948 (BKS/CFH)

v.

JERRY BOONE and HONORA MANION,

                           Defendants.

**Appearances:**

*Plaintiff pro se:*
Camille J. Siano Enders
Scotia, NY 12302

*For Defendants:*
Letitia James
Attorney General of the State of New York
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Camille Siano Enders commenced this action under 42 U.S.C. § 1983

against Defendants Jerry Boone, Honora Manion, and Mary Starr, in their individual and official

capacities, alleging that Defendants terminated her employment with the New York State

Department of Taxation and Finance ("DTF") in retaliation for speech protected by the First

Amendment. (Dkt. No. 1). On February 28, 2023, the Court issued a ruling on Defendants'

motion for summary judgment (the "February 28 Decision") in which it dismissed Plaintiff's

official capacity claims, granted summary judgment to Defendant Starr, and otherwise denied Defendants' motion. (Dkt. No. 66). Presently before the Court is Defendants Boone and Manion's[1] motion for reconsideration of the portion of the February 28 Decision denying their qualified immunity defense. (Dkt. No. 70). Plaintiff opposes the motion. (Dkt. No. 73). For the following reasons, Defendants' motion for reconsideration is granted in part to the extent that the Court will more fully address the qualified immunity defense. However, on reconsideration, the Court adheres to its prior ruling.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as set forth in the February 28 Decision. (Dkt. No. 66).

## III.   STANDARD OF REVIEW

In general, a motion for reconsideration may only be granted upon one of three grounds: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). When adjudicating a motion for reconsideration, a court need not consider arguments that were raised for the first time in the pending motion. *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015); *Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08-cv-7956, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3–4 (S.D.N.Y. Apr. 18,

---

[1] As used in this decision, "Defendants" refers to Boone and Manion.

2013). Moreover, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Gun Hill Rd. Serv. Station*, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3 (citing *Shrader*, 70 F.3d at 257). "The standard for reconsideration is strict and is committed to the discretion of the court." *SEC v. Wojeski*, 752 F. Supp. 2d 220, 223 (N.D.N.Y. 2010), *aff'd sub nom. Smith v. SEC*, 432 F. App'x 10 (2d Cir. 2011); *see also New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010) (summary order) ("A motion for reconsideration is 'generally not favored and is properly granted only upon a showing of exceptional circumstances.'" (citation omitted)).

## IV.   ANALYSIS

In the February 28 Decision, the Court noted Defendants' argument that they are entitled to qualified immunity because the unlawfulness of their conduct was not clearly established. (Dkt. No. 66, at 28). However, the Court concluded: "In light of the factual disputes as to whether Defendants could successfully assert a defense under *Mt. Healthy*, the Court cannot assess Defendants' qualified immunity defense at this juncture. The Court therefore denies Defendants' request for qualified immunity at this stage of the proceedings." (*Id.*).

Defendants now seek to "remedy the Court's framing of the right at issue in connection with Defendants' qualified immunity defense," appearing to argue that the Court committed a clear error of law in evaluating the qualified immunity defense. (Dkt. No. 70-2, at 9).[2] Defendants argue that (1) the issue is "whether Defendants could constitutionally terminate Plaintiff when it was found that she abused state resources" and (2) the issues of fact the Court identified in the February 28 Decision are not relevant to the qualified immunity analysis. (*See*

---

[2] Defendants point to no intervening change of controlling law or availability of new evidence.

*generally* Dkt. No. 70-2). Plaintiff responds that the Court properly framed the constitutional right at issue and that the disputed issues of fact preclude a finding that Defendants are entitled to qualified immunity at this stage. (*See generally* Dkt. No. 73-1). The Court grants Defendants' motion for reconsideration to the extent that the Court will more fully address the qualified immunity defense but, on reconsideration, adheres to its prior ruling.

Public officials are entitled to qualified immunity on a Section 1983 claim "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)) (internal quotation marks omitted); *see generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Radwan*, 55 F.4th at 113–14 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). To demonstrate entitlement to summary judgment based on qualified immunity, a defendant must

> adduce[] sufficient facts such that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that [it] was acting in a fashion that did not clearly violate an established federally protected right.

*Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (citation and brackets omitted). "The Court first construes disputed facts in favor of the plaintiffs but then is required to 'dismiss the claim if, at the time of the defendant's conduct, the law was unclear whether the facts so construed[] constituted a violation of the plaintiff[s'] constitutional rights." *Barzilay v. City of New York*, 610

4

F. Supp. 3d 544, 602 (S.D.N.Y. 2022) (quoting *Lynch v. Ackley*, 811 F.3d 569, 573 (2d Cir. 2016)).

A clearly established right "is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Radwan*, 55 F.4th at 114 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "This requires that controlling authority or a robust consensus of cases of persuasive authority have recognized the right at issue." *McKinney v. City of Middletown*, 49 F.4th 730, 738–39 (2d Cir. 2022) (citation and internal quotation marks omitted). A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Radwan*, 55 F.4th at 114 (citation omitted). "[C]ourts must be careful 'not to define clearly established law at a high level of generality,'" because the "dispositive question" is "whether the violative nature of *particular* conduct is clearly established." *McKinney*, 49 F.4th at 739 (citations omitted).

Here, Defendants argue that the Court improperly framed the constitutional right at issue in connection with their qualified immunity defense. Defendants argue that the Court framed the right "more generally" and quote the Court's statement that "the sole protected activity at issue [in this case] is Plaintiff's outside judicial campaign." (Dkt. No. 70-2, at 11 (quoting Dkt. No. 66, at 18)). However, the Court made this statement when evaluating the elements of Plaintiff's First Amendment retaliation claim on the merits and identifying the protected activity underlying her claim. (*See* Dkt. No. 66, at 17–21 (discussing protected speech element of retaliation claim, noting that Plaintiff "ha[d] not identified any specific protected speech that is the subject of her retaliation claim beyond the fact of her campaign," and concluding that the Court would "consider the 2016 Campaign as protected speech [from employer retaliation]" for purposes of resolving the summary judgment motion)). The Court did not identify the right at issue for

purposes of qualified immunity and determining whether that right was clearly established. (*See id.* at 27–28). Rather, the Court denied the qualified immunity defense in light of "factual disputes" as to whether Defendants could assert a successful defense under *Mt. Healthy*. (*Id.* at 28).[3]

For the purposes of the qualified immunity analysis the Court notes that in 2016, at the time of Plaintiff's termination, it was clearly established that the First Amendment protected a government employee, speaking as a citizen on a matter of public concern, against retaliation for that speech "except where the government's interest in the agency's proper functioning outweighed the employee's First Amendment right." *Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2006); *see, e.g., Ricciuti v. Gyzenis*, 832 F. Supp. 2d 147, 164–65 (D. Conn. 2011) (denying qualified immunity to a public employer because "the law was sufficiently clear in 2009 that a government employer should have known that it could not fire an employee because she spoke out as a citizen about a matter of public concern"), *aff'd*, 834 F.3d 162 (2d Cir. 2016).

Defendants argue that they are entitled to qualified immunity because it was not clearly established that a public employee has a right to conduct a campaign for political office without being fired where the public employer's ethics officer and Office of Internal Affairs determined that the employee conducted campaign activities with government resources. (*See* Dkt. No. 70-2, at 10–11; *see also id.* at 13 (arguing that "it was not clearly established that Plaintiff had a constitutional right to run her political campaign while using state resources to do so")). However, as Plaintiff points out, this "presumes that [the Office of Internal Affairs ("OIA")]

---

[3] Indeed, Defendants' arguments regarding qualified immunity on the motion for summary judgment all relied on the fact that Plaintiff had campaigned using state resources or in the workplace. (*See* Dkt. No. 57-1, at 24 ("[I]t was not clearly established that Plaintiff could not be terminated for conducting political activity in the workplace."); Dkt. No. 65, at 7 (referencing "conducting campaign activities at [the] workplace," "using employer resources to do so," and "misappropriating employer resources")).

found that Plaintiff had abused state resources in her campaign." (Dkt. No. 73-1, at 7). In the February 28 Decision, the Court found that Plaintiff had raised "a question of fact" as to whether she "in fact campaigned on State time or in the DTF workplace" and as to "the findings made by OIA which purportedly led to her termination." (Dkt. No. 66, at 23). And at this stage the Court must construe all disputed facts in favor of Plaintiff. *Barzilay*, 610 F. Supp. 3d at 602. Thus, even if Defendants' proposed formulation of the right at issue is correct and that right was not clearly established at the time of Plaintiff's termination, factual issues regarding whether Plaintiff in fact campaigned using state resources preclude a finding that Defendants are entitled to qualified immunity at this juncture.

Defendants argue that they were entitled to rely on the findings of the OIA investigation into Plaintiff's campaign-related activities, even if those findings were incorrect. (Dkt. No. 70-2, at 14–15). Even assuming OIA informed Manion that Plaintiff campaigned on state time, however, the Court concluded in the February 28 Decision that a reasonable factfinder could find that Defendants' actions were "motivated by retaliatory animus," i.e., taken because of the outside judicial campaign and not necessarily because they believed Plaintiff had campaigned using state resources. (Dkt. No. 66, at 22). Thus, a factual issue regarding Defendants' intent again precludes a finding that Defendants are entitled to qualified immunity. *See Locurto v. Safir*, 264 F.3d 154, 170 (2d Cir. 2001) ("[A] plaintiff need only 'show particularized evidence of direct or circumstantial facts supporting his claim of unconstitutional motive' in order to survive a motion for summary judgment on the defense of qualified immunity" (citation omitted)).

Finally, Defendants argue that they are entitled to qualified immunity because, viewing the right at a more general level, the "extent of a public employee's right to run for public office

is not clearly established." (Dkt. No. 70-2, at 11 (quoting *Matters v. Estes*, No. 13-cv-578, 2013
WL 2403663, at *3, 2013 U.S. Dist. LEXIS 76984, at *9 (N.D.N.Y. May 31, 2013))).[4] The
*Matters* case on which Defendants rely does not address a public employee's right to engage in a
pre-approved campaign. In *Matters*, unlike here, the government employee plaintiff sought and
was denied permission to run for political office. The plaintiff worked for the New York State
Thruway Authority ("NYSTA") and had previously received approval to conduct and conducted
five different campaigns for political office. 2013 WL 2403663, at *1, 2013 U.S. Dist. LEXIS
76984, at *3–4. NYSTA subsequently charged the plaintiff with "us[ing] NYSTA telephone
resources to conduct non-NYSTA business." *Id.*, 2013 WL 2403663, at *2, 2013 U.S. Dist.
LEXIS 76984, at *4–5. When the plaintiff thereafter sought approval to conduct two additional
campaigns for public office, NYSTA denied the requests. *Id.*, 2013 WL 2403663, at *2, 2013
U.S. Dist. LEXIS 76984, at *5–6. The district court, in denying the plaintiff's request for a
preliminary injunction, found that the plaintiff had not demonstrated a likelihood of success on
the merits of his claim that the denial of his requests to conduct a campaign violated his First
Amendment rights because "[t]he extent of a public employee's right to run for public office is
not clearly established." *Id.*, 2013 WL 2403663, at *3, 2013 U.S. Dist. LEXIS 76984, at *9.

The Court finds *Matters* to be distinguishable and not directly applicable to the instant
issue. First, *Matters* considered the denial of a public employee's request to run for public office,
not the termination of a public employee allegedly for engaging in a pre-approved campaign.
And the district court in *Matters* found that the First Amendment claim was unlikely to succeed

---

[4] Defendants argue that, "[b]ased on *Matters*, a reasonable person could believe that preventing Plaintiff from
continuing a political campaign after it had been determined by investigation that Plaintiff used DTF resources for
campaign purposes did not violate Plaintiff's rights, just as this Court determined it would not likely violate Matters's
rights." (Dkt. No. 70-2, at 13). Here again, however, the question of what was "determined by investigation" is
disputed, and this argument does not therefore provide a basis for qualified immunity. (Dkt. No. 66, at 23).

after noting that there was nothing to suggest the defendants' denial of his request "was anything other than viewpoint neutral," and that the decision was based on legitimate work considerations. *Id.*, 2013 WL 2403663, at *4, 2013 U.S. Dist. LEXIS 76984, at *12–14. Second, the cases the *Matters* Court cited appear to be more germane to the right to run for public office in the first place, and not the First Amendment protection that is accorded to a candidacy that has already begun and was approved by a public employer. *See id.*, 2013 WL 2403663, at *3–4, 2013 U.S. Dist. LEXIS 76984, at *9–11; *Clements v. Fashing*, 457 U.S. 957, 959, 963 (1982) (evaluating Equal Protection challenge to provisions of the Texas Constitution limiting "a public official's ability to become a candidate for another public office"); *James v. Texas Collin County*, 535 F.3d 365, 377 & n.12 (5th Cir. 2008) (stating that "it is unclear that the First Amendment provides a right to run for office that extends generally to government employees" but then recognizing that the First Amendment "does not guarantee a government employee the *absolute right* to continue as a governmental employee while being a candidate for political office" (emphasis added)). Furthermore, *Matters* also cited *Randall v. Scott*, an Eleventh Circuit case which, while recognizing that "precedent is not entirely clear regarding the degree of First Amendment protection for candidacy," noted that "every case addressing the issue has found *at least some* constitutional protection." 610 F.3d 701, 713 (11th Cir. 2010) (emphasis added); *see id.* (noting further that a "candidacy cannot be burdened . . . without a whisper of valid state interest"). Thus, construing all disputed facts in Plaintiff's favor, and in the absence of more helpful briefing, the Court concludes that Defendants have not demonstrated their entitlement to qualified immunity at this stage.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for reconsideration (Dkt. No. 70) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that, upon reconsideration, the Court adheres to its prior ruling.

**IT IS SO ORDERED.**

Dated: <u>April 20, 2023</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge